Good morning, Your Honor, and may it please the Court. With your approval, I'd like to reserve five minutes for rebuttal, and I will keep an eye on the clock. Your Honors, we're here today because summary judgment was granted where there were facts in dispute. I'm sorry, my name is Aaron Gott, and I represent Rong Dong Li. We're here today because summary judgment was granted where facts were in dispute. In this case, my client was in an immigration detention center. He went into the bathroom to use the restroom and came across two men fighting. He did the right thing. He called the guards, and the guards came, broke up the fight, and took them away. An Akal security officer, however, released the guards, and by the time my client was finished using the restroom... I'm sorry, he released the two men. I'm sorry, yes, Your Honor, released the two men. By the time my client was done using the restroom, he was washing his hands, one of the two men had come back in with a cohort and began to beat him nearly to death, and he's blind as a result. Can you summarize the facts in the record that would have put the guards on notice that this would happen, that one of the individuals involved in the earlier fight would come back and retaliate against Mr. Li? Yes, Your Honor, and I stress summarize. There are other facts as well. For example, it was a U.S. Customs agent who physically broke up the fight and then handed off the two violent detainees to the Akal security guards with instructions to segregate them. Those are also important facts, I think, for the purposes of foreseeability. But the posture of this case is troubling because you filed a complaint, I guess it was you? No, Your Honor, prior counsel. Okay, prior counsel filed a complaint, and the district court found the allegations woefully inadequate on describing what you've now amplified in response to Judge Wynn's question. Those did not appear in the original complaint, just there was a fight, and he complained or alerted the guard, and they should have known. And so the district court dismissed with leave to amend. And the second, the first amendment, amended complaint came back and with certain amendments, but didn't make any amendments to the picking up on the judge's at that point, he dismissed with prejudice. Your third amended complaint actually came back and provided not quite the detail you just said, but let's argue, let's say it was more amplified and clarified. But that was rejected by the district court as you didn't have leave to amend after the first dismissal on the merits. So why is that not dispositive here? Well, Your Honor, I think the issue there is that the court dismissed theories rather than claims. I only brought claims, one claim for negligence and one claim for negligent infliction of emotional distress among other claims, but only one of each of those claims with three different alternative theories under which he could recover for those claims. So what the court did was dismiss theories with prejudice without stating so, while allowing the claims to move forward. But when we get into discovery, the allegations don't always play out exactly, the evidence doesn't always play out exactly as the allegations, and litigants usually have the the pleading stage or alter their theory of recovery so long as they can do so under a valid claim. Well, it's fact-based, and the theory is fact-based in this case. What he did allow to proceed, and the district court adjudicated that eventually, was the failure to come back, you know, rescue him on a timely basis. What's your authority for saying that on the initial, which is what you're pressing here, not the, you haven't appealed the summary judgment on the other theory, as you put it, what's the authority to say that you can revive the general claim on a theory that was, from the get-go, isolated, identified, and found wanting twice, and dismissed with prejudice? What's the authority to say you can't do that on a 12b6? Your Honor, I think the authority is under Rule 8, and that, and Rule 8 provides that a pleading may state alternative theories of recovery, and if any one of those theories is sufficient, then the claim is sufficient. So even though the theory that proceeded was the failure to rescue, the dismissal with prejudice on the original, you know, allowing them to come back in, is still in the case. Yes, Your Honor. I think it was, the claims were not dismissed, and furthermore, the court didn't state expressly in its dismissal order that it was dismissing with the, those claims with prejudice. I think it's pretty clear. What it says, Your Honor. I take your argument on it, but it's. Let's, assuming for the moment that you're right, that you can rescue the claim in that fashion, did you give me your best facts that give rise to reasonable foreseeability already? That the, that the agent broke up the fight to segregate the claim, and did you willingly give rise to a reasonable foreseeability or notice on the card's part? Yes, Your Honor. The, the, the two men who were fighting, it was a, it was a violent fight. They were cut up and bruised. It was clear that they'd been in a fight. They'd been told by a U.S. officer that they'd been in a fight, and they were not segregated as, as they should have been. It's, and it's provided for in the contract that ACAL has with the U.S. government that they must segregate violent detainees, and that's for prisoner safety or for. And the violence stems from the mere fact that they were involved because they, they weren't well, wearing the uniforms of individuals who were identified as having propensity to violence, right? You're saying that the guards should have known that they're violent by virtue of the fact of the fight? Yes, Your Honor. I don't think we need to get into the color of uniforms. They didn't have time. The, the fight had just occurred. They knew it occurred, and the fact that they weren't wearing a particular color of uniform, or they didn't style their hair in a particular color that day, or way that day, does not mean that they don't have a propensity for violence that's obvious and should guide the conduct of the ACAL security officers. In a, foreseeability under California law is, is not whether or not uniforms are red or, or not. The question is whether or not there are, excuse me, the real question here is, on summary disputes of fact on which a reasonable jury could have inferred that violence against my client, Mr. Lee, was foreseeable. And I believe on the facts that, that we've discussed here, that that, that is the case, and that ACAL did have the duty to segregate, either segregate these violent detainees, or otherwise protect Mr. Lee from violence. And if, I'll reserve the rest of my time. Okay, Mary. Good morning. May it please the court, Michelle Ferber on behalf of ACAL security. To address a few of the things that my colleague mentioned, the fact that he mentioned that there was the breakup by an agent of the U.S. government, I don't see that anywhere on any of the record, or the pleading. So that would be a new fact. I also think it's important on the foreseeability issue to really focus on what the facts were and what the court considered on the motion for summary judgment. And those facts were that neither, there was nothing that had ever happened prior to this very limited in time and scope incident to put ACAL on notice that these two DOE individuals were violent, or that they posed a threat to Mr. Lee. The incident with Mr. Lee, by his own testimony, lasted between seconds and one minute. So the ACAL security guard was available and at the post, and as required by the contract, and immediately broke up the incident. The other thing that's important with respect to foreseeability is that the uniform colors do matter. Because we're not in a jail situation, we're in a detention center, yet there are some detainees who may be known to be violent, or have had caused problems, and they were segregated and wearing a different color uniform. The individuals involved in the altercation with Mr. Lee were not in those color uniforms. They were... But what about the fact that counsel cited, you know, obviously all this happened within a short period of time, so there wasn't time, presumably, to change the designation that would have triggered a different uniform, but they had just been involved in an altercation. But there was no evidence presented ever that the altercation in the first instance had anything to do with Mr. Lee, or why he would be threatened or in danger because he had communicated this altercation to the security officer. I don't see anything in the record that establishes that, that that would be foreseeable, that they should have known that because of a short incident fight, that these two individuals had to be immediately removed. So bottom line, from your perspective, you have two individuals, never had any problems before, they're not in the color of uniform that would suggest they need to be segregated. They get in a fight, surprised, everybody, Mr. Lee comes in, tells about it, they come back, but there was no evidence that should have put a call in on notice. Yes, and there's an additional fact that I think supports that, and that's that when the altercation between the two individuals was broken up at Mr. Lee's request, the two individuals were sort of hugging each other and acting like they had a misunderstanding. And I think we have to take into account the situation, the facts show where we are, we're in a detention center, we're not in a jail, which is a lot of the cases that were cited. And so there's interaction and things that happen that don't require segregation, that don't necessarily result in violence. There was ample opportunity given by both the judges in the district court to obtain facts, provide additional facts, there was an additional theory allowed to go forward. If it was at all foreseeable that a call should have done more, they, according to the court, had the requirement to do so. And none of those facts were ever alleged as to foreseeability. Okay, so just so I understand, I was focused on the motion to dismiss. You're talking about the summary judgment, and you're saying that in that context, we should be looking at the, whatever was in the record at the time of summary judgment, to give a call notice. And that would include the breaking up of the fight, his reporting in the first instance, the breaking up of the fight, the attempt to, or the, you know, the attempt of the first guard to get the guard number one to take him out of the building. And then they're coming, but instead they're being immediately turned loose, and then going in to the restroom and beating up one of them, beating up the victim here. So we should be looking at, that's what we should be considering at this point. I think so. I think that the original ruling on the motion to dismiss was correct. There were two ample opportunities to amend and provide additional information. And there's more information in the record, which is the third amended complaint. Well, the third amended complaint, the allegations, the specific factual allegations, and I can give you the paragraph numbers on those, that they were in the second amended complaint as well. So they weren't new allegations. They're trying to be used differently, but all the same facts as to a call were in both the second and the third amended complaint. In the third amended complaint, they allege that they say... What paragraph? Second amended complaint, paragraph 14, has the alleged additional facts of how Lee first alerted the guard, the cut on the bridge when detainees nosed, and the guard walked him to a call officer who was supposed to walk the detainee out of the building. Those were in the second amended complaint at paragraph 14. And then the third amended complaint? They are cited in the reply as to the additional detail. And let me see where they are in the third amended complaint. I believe they're in... Some of them are in paragraph 15. And some of them also in 14. That talks about the cut on the bridge of the detainee's nose. I'm looking at the third amended complaint, paragraph 14. That's what you cited, and you called the second amended complaint. Right. In the second amended complaint, those... The reply brief alleges that they alleged additional facts in the third amended complaint. They appointed... At page eight of their reply, they allege that they put three additional facts that should have been considered by the court in the third amended complaint. And my argument is that those same facts were in the second amended complaint. They're not new facts. Let me just be sure. As I understand it, while originally he presented three different negligence theories, the only one that's before us was that Akella was negligent for failing to segregate John Doe one after the initial fight in order to protect him from retaliatory violence. That's it, and then the district court got into the foreseeability issue in its evaluation. Right. That would be Judge Burns's order, correct? That's correct. And so they made an argument before you, however, that in the third amended complaint, there were new facts alleged, I think to address your question, that should have somehow been considered and might have changed things, but they're not new facts. They were in the second amended complaint, which is what Judge when he limited the one theory of negligence that would survive, which we then did discovery, depositions, and then filed the motion for summary judgment. He had the sack at that point? Yes. Okay, not the third one. Not the third. And I think that when you read the, if you really look at the order on the motion for summary judgment, there was a concerted effort by the district court to say, okay, we've looked at every, I've looked at everything. I don't think I have to, because I don't think that it's appropriate on the third amended complaint because neither the court nor a call was given notice. And it says that in the order that there were some new theories trying to be presented in the third amended complaint, but I'm going to look at it anyway and see if it changes my mind. And it didn't. There still are no facts as to the foreseeability issue. Okay. I just want to make sure we're looking at the same documents. Okay. My notes have it as the first amended complaint. Oh, the first amended complaint. The first amended complaint, the allegations about the original reporting are in paragraphs 10 and 11. I agree with that. Okay. And there's a second amended complaint. There is a second amended complaint. Counsel, the only thing that, the only additional thing I'd like your help on, we have a case called Volandingham versus Borroquez that deals with allegations that a prison official labeled an inmate a snitch subjecting to retaliation by unions. And the court found that it supported a cause of action for violation of the inmate's constitutional right to be protected from violence while in custody. Similar situation to what we had here. What role, if any, should that case play in our analysis of this particular alleged cause of action? Well, I think you go down a slippery road if you... We always do. If you analogize what goes on in our immigration system, which is not a criminal system, to confer and imply that the rules of jailhouses and snitches should therefore be how the private security officers within these detention centers should operate. I mean... You agree that, aside from that distinction, that they're pretty close? They may, in fact, be close. I don't know that they're designed to be close. Why is it different in terms of foreseeability? I think it's different in foreseeability because there is no predisposed idea that the people that you are guarding and providing security for include violent criminals or people who have committed any crimes. And yet you have colored uniforms to help segregate people who are so. Who have become so once they're there. And become so once they're there. I think that's the difference. And there's a distinction too between... What if you have somebody that comes in that you know is a violent slasher? You'd put them in one of those uniforms immediately, wouldn't you? I think that would come under the jurisdiction of ICE before it gets to a call. A call doesn't normally make that decision or any security contractor. But bottom line, some people come into your facility and they immediately put in those uniforms, right? Yeah, I think some come in predisposed. That's part of your responsibility is to be mindful of who might cause harm to others, right? Absolutely. In that sense, it's not any different from a jail. In that sense, I agree with you. It's not different. And I'm certain that the people there feel as if it's in a jail. But the idea that in this situation, that it should be a foregone understanding and foreseeable situation in all instances, when a detainee alerts a security officer for assistance because someone's fighting or because there's an altercation or something's going on, that that gets to this level of jailhouse snitch, which may imply a drug scheme or all kinds of things that a jailhouse snitch implies. This wasn't that. And so I don't see how that changes the definition of foreseeability under these facts. It's all semantic to some degree. But if you had a jail situation where somebody had already been in problems and if they got nabbed with something else, they'd be put in solitary confinement. If you said, you know, Joe over here, he was fighting with him in the bathroom and he gets put in solitary confinement. That's a snitch in a jail setting. In a jail setting. But I don't believe there's any facts that show that there's a solitary confinement option here. It's simply. I don't mean that's not my point. My point is simply that this is a relatively analogous situation. And at least in this one case that we had, we felt that was foreseeable and that there was improper action on the part of the officials. Why is this different? I think it's different because I don't think you have a snitch. I think you have someone who may witness something where people are hurting each other. They need help. Maybe somebody fell. I don't know that there was any information imparted that he became a snitch on two people fighting or violating the rules. In his own deposition, he says that he couldn't always, even after being there the number of years, he didn't always use English as his language. So his ability to communicate might have been somewhat limited. I thought he called out in his own communication. But that was after the fact. That was after the fact. And I think other parts of the record would show that he admitted that his communications, while he understood the colors by seeing them, might've been limited. So I don't think that there's any foreseeable or facts in this case to make it like the case that you've cited because. You're familiar with that case, right? I'm familiar with the case based upon the reading. Right. Yes. I don't think it's the same issue because I don't even believe that we have the facts to show that he, Mr. Lee, was quote, a snitch. Okay. Any questions by my colleagues? If not, then we have time for rebuttal. Thank you. Thank you, Mr. Chairman. I just want to say something about my colleague's comments here. I don't believe that it is a foregone conclusion that that's always foreseeable, but we're not talking about whether it's a foregone conclusion. We're talking about whether or not a jury can look to whether or not it was foreseeable in these circumstances. At this posture, we're on summary judgment and most of what we've talked about are factual disputes. You know, whether or not in this particular circumstance, a detention center is the same as a prison, whether or not the red uniforms matter. These are all factual issues that should be reserved for the jury. But to actually address those factual issues, I think it is analogous to the prison situation. When you lock people up, certain things happen. They act in certain ways and it's not as though every person in a prison in America is a violent offender of some sort. In fact, I believe many of them are nonviolent offenders. People who are in prison broke the law, people who are in detention broke the law. So I'm not sure that that's a meaningful distinction here. But going back to whether or not the two cases are analogous, they're not analogous in one way. And that way is the fact that in the Van Landingham case, we're dealing with the constitutional standard, which is essentially a reckless disregard standard. Here, we're talking about simple negligence. It's a completely different standard. It's far lower than in that case. To go back to the, I don't want to throw another wrench in the gears here, but when we were discussing the second versus the third amended complaint, I think it's a little bit more, it wasn't as though Mr. Lee tried and failed to allege something three times. The first amended complaint was ruled upon. The second amended complaint was not. And the reason that it wasn't was because there was government defendant in this as well. And allegations regarding that defendant were deemed deficient. So I think it should be the first and third complaints that if you're going to compare the two between the allegations. And I mention that because when I first started getting into the record of this case, I was confused about that as well. Yeah. I'm glad you straightened it out because I've been looking at the first and third. It does seem to be a qualitative difference between the two. There is, Your Honor. But counsels can suggest that they're not really new facts and she doesn't seem to mind her taking them into account. So that's fine. The other thing I'd like to address, Your Honor, is my colleague here said that there was no evidence presented as to whether or not there was a threat to Mr. Lee. But again, we're on summary judgment and the defendants filed for summary judgment. They did not address, other than to describe uniforms, they didn't really address the foreseeability issue as to the segregation or protection of Mr. Lee as a result of the fact that the detainees were violent. So the burden is on Acal, not on Mr. Lee, to show that there was no threat to Mr. Lee. And that's all I have, unless there's any questions. Thank you. Thank you very much. Thanks to both counsel for your presentation. The case just argued is submitted.
judges: Fisher, M. Smith, Nguyen